I'll show you what I'm talking about. Very good. May I proceed? Yes, Your Honor. This court here's patent cases. And that is a significant advance over the way it was conducted in the 70s and earlier, with circuit courts for patent cases. What's a kayak? What's a kayak? A kayak is a boat that has a narrower front end, a narrower rear end. Double-ended, isn't that the term that's important? Double-ended? Well, Your Honor, judge for Claim 3 and Claim 6, double-ended is specifically a feature of those claims, yes. So a kayak is a certain kind of kayak for certain claims, and a kayak is different for other claims? Well, Your Honor, in fact, when drafting claims, an inventor does not have to include every feature of an invention in every claim. But if you refer to kayak in all claims, and the specification clearly says a kayak is a small, double-ended boat, wouldn't that definition apply to the use of the term kayak in all claims? Well, Your Honor, I believe when we say that, the inventor is describing what's known as a traditional-style kayak. And the inventor goes on, as his own lexicographer says, as used to herein, a kayak is a traditional kayak, more modern sporting kayaks, and other kayaks aren't boats. So when it says a kayak, that means one kind of traditional kayak to the exclusion of the other types of kayaks that are referred to in the specification? Well, that's exactly what the district court needs to do, Your Honor, figure out exactly what's a traditional kayak, more modern sporting kayak. Well, I want you to answer my question, though. I mean, is that your position? That when the term kayak is double-ended, when you refer to, that's only traditional kayaks, that the other kayaks talked about in the spec are not traditional kayaks, are different? Our position, Your Honor, for what a kayak is, is a kayak is double-ended, as defined by the Coast Guard definition. Yes, and in Claim 1, they did not specifically claim that it has to be double-ended. So, to answer your question, yes, a traditional kayak, more modern sporting kayaks, and kayak-like boats are double-ended, as that term is defined by the Coast Guard definition. That is the position of the appellate. Now, in Claim 1, they refer to a kayak style hull, defining a cockpit, and having a stern. In the specification, they refer to a kayak is capable of performing underwater, and a kayak is capable of being paddled by a double-bladed paddle. Those are elements we believe, if the district court had wanted to... Something else you call a kayak, which is not double-ended. Show me where you have... We did not, Your Honor. We did not. So, in other words, we can come to the assumption that a kayak is always double-ended. If the court is going to import a limitation from the specification, that's what the court would do, yes. We certainly are not going to violate our own law, are we? Your Honor, I'm not... So then, perhaps your response ought to be in a little more respectful tone as to our law, that no, we're not going to import any limitations from the specification. Now, does the specification draw a distinction between a traditional kayak and other kayaks? Forgive me, Your Honor, but not my intent to be disrespectful. Your Honor, no, it does not. It refers to a kayak, which we believe, the first sentence, it refers to a traditional kayak. It refers to traditional kayaks, modern sporting kayaks, and kayak-like boats. It's the position of the appellant that all kayaks are double-ended, as defined by the Coast Guard definition, not as defined by the district court. What did the district court use for the Coast Guard definition? The Coast Guard, they did, and then some, Your Honor, and then some. The Coast Guard, the district court actually added language that didn't have any place in the record. If they had just specifically defined double-ended by the Coast Guard definition, we would not be appealing to the construction of double-ended. But the district court went beyond and added gradually tapers for bow and stern. That was not part of the Coast Guard definition. That was added by the district court. And frankly, we don't know where that came from. Your view as to how the claim should be construed, so it's not limited to a essentially symmetrical double-ended boat. How are you going to overcome, you then have serious problems with respect to the prior error, because water jet-powered boats are not new. What was new, as I understood the presentation in the specification, was a kayak. That was not the traditional boat shape. It was water jet-powered. Well, Your Honor, the examiner cited three types of documents. The first document was the artifact document, which would put what the court would consider generally a traditional style kayak. The second document was a jet ski. And the third document, so the two of them were Zymat, and I forget the other one, those were powered canoes. And the examiner combined Jacobson and Arquette and said, this is an obvious combination. And Mr. Arndt responded that, in fact, that was not an obvious combination. That combination would not work. And since it would not work, it could not be obvious. What's a displacement hull? A displacement hull was at some dispute before the court, Your Honor. A displacement hull is, let me back up. A hull is not a static thing. So at some speeds, hulls can be displacing. At some speeds, hulls can be plane. You can take almost any hull and give it enough force, and it would not be displacing anymore. The point you're telling me is that a displacement hull becomes a little broader, doesn't it? It displaces more water. Am I understanding that correctly? Well, a displacement hull, Your Honor, rides in the water as opposed to on top of the water. So once you have enough speed, if it's originally a displacement hull in the water, at enough speed it becomes a planing hull because it's no longer riding in the water, it's riding on the water. You want us to read kayak as being something more than double-ended because of claim differentiation. But the claim you point to doesn't just respond to double-endedness, it also talks about being a displacement hull, doesn't it? That is correct, Your Honor. So we can't really completely accept your claim differentiation argument as to its impact on double-endedness, can we? Well, Your Honor, I respectfully disagree with that. All right. Tell me why. Because claim two adds the limitation of a displacement hull. Claim three adds a double-ended displacement hull. And a displacement hull. That's correct, Your Honor. So if a kayak already has a double-ended in it, then there is no need for claim three. It would be covered by claim two. But we begin to see why in Phyllis we don't adopt claim differentiation as an invariable rule, do we? And I'm very careful to say it's a guideline, not really a rule, because as I think my colleague, Judge Prost, quite insightfully asked at the beginning, everything has to be a kayak. And so the kayak term pervades all the claims, and the claim differentiation can't override the fact that it's all one invention. That is correct, Your Honor. However, in response to Judge Prost, I did, in fact, say it's the position of the appellant that kayaks have double-ended hulls as defined by the Coast Guard definition. So given that, Your Honor, it is very reasonable that I can expect the court to say claim differentiation will not apply in this particular case to claim three. I can see that, Your Honor, because of the position I've announced to Judge Prost. That, however, does not stop the disreport from being correct in defining double-ended beyond what was in the Coast Guard in certain language that didn't come from anywhere. Doesn't that get you then into the problem that our presiding judge has mentioned, that the prior art had extensive disclosure of jet-ski type of boats like the accused device? Well, in fact, Your Honor, if you look at Jacobson, and unfortunately, there's no dimensions that are provided, but if you look at the picture in Jacobson, it doesn't define a cockpit, and it doesn't have the transverse dimensions that are required by the Coast Guard definition to fit within a double-ended. So Jacobson wouldn't be double-ended in any case. So you don't get into the problem of Jacobson. But the question is, did Mr. Arm disclaim jet-skis? There would not be an issue. But that is not what the disreport said. The disreport essentially said he disclaimed everything which was not the traditional style type of boats. Can you point me to whatever you think there is in the specification that supports the Coast Guard definition of 45%? Oh, Your Honor, no, no. I'm sorry, I cannot. In fact, the Coast Guard definition is something that was submitted by the appellant without any responsive evidence saying it's not generally reliable. Mr. Arm provided that saying that had been relied upon for 20 years. So there's not a reference to the Coast Guard definition in the specification. I mean, nothing is intrinsic evidence that it refers to the Coast Guard definition? No, Your Honor. Your specification does kind of set jet-skis aside as something very different from your kayak. Why isn't the accused device of jet-ski in the trial court is entirely correct in reading it that way? Well, first of all, Your Honor, I don't believe anybody has argued it's a jet-ski. Second of all, a jet-ski is generally something you kneel on or stand on. He's found that it's a non-kayak. Perhaps I've jumped to the jet-ski conclusion on my own, but why isn't it a non-kayak for the reasons that the district court said? Well, Your Honor, Anna, if I may be allowed to answer this in complete. First, it has a cockpit and a stern. It has dimensions that fit within the Coast Guard definition. The user can use a double-bladed kayak paddle. In fact, it's sold with a double-bladed kayak paddle. The user can put a flexible enclosure, which is referenced in the specification, around his waist, and in fact, it's sold with what's called a sprayer. It can do an Eskimo roll. It can go forwards. It can go backwards. It can be handled in white water. This is why it's a kayak. A jet-ski does not have a flexible enclosure that goes around the waist, and it cannot be made to have one. A jet-ski is not padded with a double-bladed paddle. A jet-ski does not have a cockpit that you sit within. That is why a jet-ski is not a kayak. It is not a canoe, either. A canoe is open. You generally use your knees in a canoe. Some canoes are quite broad, and you can use a double-bladed paddle. Typically, with a canoe, you use a single paddle. Certainly, a canoe cannot be Eskimo rolled under any circumstances, and canoes are not sold, and they don't have a hull that's adapted to receiving a flexible enclosure or a sprayer. That's why the Mokai is not a canoe. It is not a canoe. It is not a jet-ski. It is a kayak. Sir, are you arguing, as I don't know what you're asking about, that if there were not literal infringement because it is not the accused device, it is not literally a kayak because it's not symmetrical, that because of the other similarities that you have just told us about, that there should have been a trial under the doctrine of equivalence so that there is equivalency, or that there are fallback positions that were not explored. Is that part of your appeal? Certainly, yes, Your Honor. Of course, we do say it literally infringes, but as the fallback position, Your Honor, we do believe it would certainly infringe under the doctrine of equivalence. The argument of the appellee as well as the district court's analysis was that, well, we've incorporated basic symmetry and double-endedness by disclaimer into kayak, and therefore if you're allowed to argue the equivalent of basic symmetry and double-endedness, that that would essentially, they didn't use the term, but vitiate the claim, and therefore you can't have a doctrine of equivalence under the all-elements rule, and we believe that's incorrect. We believe we would be allowed to find the equivalent of a kayak style hull. We don't believe the claim element, specifically kayak style hull, defining a cockpit and having a skirt, is entirely vitiated by allowing you to have an equivalent of that. Okay, thank you. Let's hear from your result. Good morning. May you please report? I'd like to reserve five minutes for rebuttal. Do you have a cross appeal? I'm sorry? Do you have a cross appeal? No, just in case that there was some- Okay, if it's not necessary, then I won't need it. I'm just trying to reserve time to respond to anything else that is there. You don't receive it. You're the appellee. Rookie mistake. The court's questions about whether or not a kayak has to be double-ended are exactly what we're here for. We don't know where the Coast Guard definition came from, but we do know that the first line that says kayak is a double-ended boat, so we have to find out what does double-ended mean. We can look at some technical sources. The court did that. I'm a little confused about this case because the appellee is kind of arguing against the claim of construction here, even though they're the winners. I guess, Mike, in order to understand this, this is not a trick question. Under that definition, then, you can see that there's a problem with respect to the finding of no infringement if we literally apply the definition that the court accepted in its claim of construction. I want to make sure that I understand the question. First of all, let me start here. The reason that we looked at the claim of construction again in the district court, we don't necessarily disagree with all of it. We disagree with some of it. We don't believe that the Coast Guard definition should have been imported into it. Let's assume we agree with the district court and with the appellant that the Coast Guard definition is out. Do you think there's a problem then with the finding of no infringement? I don't think there's a problem if the district court claim of construction of double-ended applies because there are two facets to it. One is double-ended requires a gradual narrowing from the broadest beam toward the bow and toward the stern, and it has to meet the Coast Guard definition. So even if the accused watercraft meets the Coast Guard definition, you still have to have gradual narrowing toward the bow and the stern. Isn't there gradual narrowing on the rear of the accused boat? There's no gradual narrowing on the rear of the accused boat. We can look at some photographs of that that are actually in our brief. If you look at pages 7 through 9 and also in the joint appendix at 7 through 9 in the brief and at 612 to 618 in the appendix, you can see, and I would like to point out too that Mr. Arndt made measurements of this craft and he said it's straight for a pretty significant length in the rear from the beam or midships or whatever term you like to use. And so the court said, we're looking at Mr. Arndt's declaration where he tried to show infringement and his measurements show there's no gradual narrowing. And that's part of why there was no infringement. I'd like to go somewhere that our presiding judge took us.  The district court said no doctrine of equivalence because there's a missing limitation. What limitation is missing? Well, there's no kayak. Okay. That's what's missing. I understand that. But if we use the definition that we find in the claim construction of the district court, it becomes an interesting question as to whether or not this is a kayak. It has many features of a kayak and it lacks a feature or two of a kayak. How do we decide if it's a kayak? I would say that it lacks many if not all features of a kayak. Okay, but here's where the problem comes in. The doctrine of equivalence by its nature only applies when there's a missing limitation, right? The answer is yes. If there was literal infringement, you would have... You have to find the equivalent in a structure. You're exactly right. There has to be an equivalent, meaning that there's a missing limitation, but there has to be an equivalent for that limitation. Now, if the doctrine of equivalence has a missing limitation rule and the vitiation doctrine has a missing limitation rule, how do we know which to apply? What we're really doing with this vitiation is just reapplying the doctrine of equivalence, right? This is a missing limitation or it really is a substantial variation. And how do we decide that without some kind of factual inquiry? And doesn't that mean that the district court erred in not looking at the doctrine of equivalence as a factual matter? That's, I think, buried rather insightfully in our presiding judge's question. The doctrine of... Let's set the stage a little bit. I just did. Okay. Now I need your answer. The... Okay. There has to be equivalent structure, as you noted, for the doctrine of equivalence to apply. Tell me why there isn't equivalent structure here. There's not equivalent structure here because the claim of this patent is to a powered kayak... And this has some kayak features and it lacks some kayak features. How do we know if it's a kayak? You have to do a factual inquiry. Didn't the district court err in not doing a factual inquiry into the doctrine of equivalence? No. Okay, tell me why. Because what the court did is it looked at the acute structure and it looked at the claims as they were construed. And it made a factual determination. This is not enough of a kayak to be a kayak even under the doctrine of equivalence. Isn't that factual? And wasn't it done on summary judgment? Isn't that error? What I would say is no, it's not error. And on summary judgment, the court looked at the accused's advice and said, I do not see this structure of a kayak which requires... Could any reasonable jury have disagreed with him? No. Could they have found the tightening around the waist, the double paddle feature, the tapering to some degree at the stern as well as the bow as being sufficient to be a kayak? No. Any reasonable juror looking at this... But now you're breaching that determination by interpreting the facts right before our eyes. You are making a reasonable... You're making a factual determination. No, I look at these facts and I can tell you no reasonable juror would do it. Let me ask your opposing counsel here. I think he's going to tell me something different. You're asking me if the judge made sufficient findings of fact for there to be... But he can't make findings of fact on summary judgment. I'm sorry. You're correct. Did he... That's what he did do and I'm suggesting that could have been the error that we have to send this case back to reconsider unless you can help me out. I'm sorry. There's only one fact and it's not subject to any reasonable doubt. It's the creft. It is the creft that's accused of infringement. There's no weighing of facts about it. There's no evaluation other than to simply apply the construed claims to the creft. That's literal infringement. We're in the doctrine of equivalence. We're trying to decide if there's equivalent structure here to make this a kayak. That's factual. There are some things that make it a kayak, some things that don't. How do I decide that? Recognizing that I can't find any facts of summary judgment. The fact that the applicant made affirmative statements about what a kayak must be both in the specification and the prosecution history that said, My invention is a double-ended kayak having basic symmetry. This is a brand new type of personal watercraft. All through the specification, the distinction was made and the invention was described in terms of a kayak, not a boat, not a watercraft. Notice that what you're doing is you're pointing out the facts that suggest it's not a kayak. He will stand up. He will point out the facts that suggest it is a kayak. Without finding facts, how do I decide? I'm talking about claim construction, which is the province of the court. That's all I'm talking about. I'm talking about the doctrine of equivalence. I'm getting to that. In the All Limitations Rule, there are many cases that follow this exact fact pattern.  Do they all have the same logical problem? I don't necessarily agree that there's a logical problem. If the All Limitations Rule says, I'm sorry, if in claim construction, the applicant makes statements that are disavowals or disclaimers, then the All Limitations Rule, or prosecution history, estoppel, even, applies without a factual inquiry and says, you're not entitled to reach these structures that you gave up. And so we don't even have to look at anything else. We have established that a kayak requires a double-ended hull and basic symmetry. You made those statements yourself. If the craft does not have those things, or I'm sorry, whether this craft has those things or not, you can't make that argument. So you're stopped from saying those features are there. It's not a – I understand your concerns about having to – about there may be a factual issue. But it doesn't apply when the patentee or the prosecution has given up the right to cover those features. They're not entitled to – they made a deal with the patent office. This is what I'm limited to. So when you say that you're limited to that invention, you can't then say, well, now I'm going to go try to cover a craft that doesn't have those features. So what I'm hearing from Martha's dad, he wants essentially any watercraft that has a narrow hull to be covered by this patent. And that's what happens when we have a term like kayak style. He doesn't say that. He says he wants a displacement hull that has the capability of insulating the operator from the water using the – whatever you call it – around the waist. It can go backward and forward. It uses the double-bladed panels. And that doesn't quite have the symmetry. The specification says kayak-like. So the specification claims are, in a sense, in that context. So it isn't as if he's excluding all of these features. It seems to me that the Accused device has many of the features of a kayak, but it doesn't have the symmetry, the clear symmetry. The rear end is not symmetrical to the front. But now they can go in both directions. But the claims have to be construed to cover a kayak which has certain features. And if any of them are absent, especially when they're principal structural features, then it's no longer a kayak. It's outside of the scope.  He says, as used herein, the term kayak shall refer to and mean traditional kayaks, more modern sporting kayaks, and kayak-like boats. So he's defined kayak as not being kayak-like. Well, if that's the case, then there's no way for anybody to try to avoid infringement, if that's all that kayak means.  Well, if that's the case, we've done our best to construe what kayak means and what kayak style might mean, and even maybe what kayak-like boat means. But without any concrete guidance as to what kayak-like means, the Accused is not allowed to expand, to use those expensive types of terms, to define. The public is entitled to some notice of what the invention is. That doesn't do it. And that's why we have our whole section on indefiniteness. If that's really the expansive scope, and that's all that can be come up with a claim construction, then it's indefinite. Because nobody would know whether or not they infringed. You couldn't possibly build around it. Okay. Thank you, Mr. Houston. Yes, Your Honors. To have a disclaimer, there must be a manifest exclusion or an explicit disclaimer. With all due respect to the lower court, to my opposing – to the opposing party, there is not that language in the prosecution history. There is a statement that a combination of a jet ski and a traditional kayak is not obvious. There is a statement that it is not a power canoe. And then there is a statement that says a traditional canoe with a jet ski is a major leap forward, a major advance. And that it preserves the double-edgedness and basic symmetry of a traditional kayak. That is a positive statement. That is not a word manifestly excluding anything. That is not a statement expressly disclaiming anything. There is no intent to disclaim. And there was no finding by the lower court that one of ordinary schoolyard in 1994 would look at that and determine a scope of what had been disclaimed. There is no disclaimer. The only possible disclaimer is that it's not a power canoe. So that's the only disclaimer that we believe could have been found with us. We believe adding the basic symmetry was a mistake. We believe adding in the language of graduate papers, which came from nowhere, to the Coast Guard definition of double-ended was a mistake. We do agree with the court, as I've indicated to Judge Post, that double-ended is inherent in any of the kayaks. And that double-ended should be interpreted according to the Coast Guard definition. Isn't the district court appropriate to say that the pole we see on page 7 of the red brief is not double-ended? Excuse me, Your Honor. It's figure 1. It's the blue bottom pole. Why is that double-ended? Because it fits the Coast Guard definition. Why is it double-ended? Because it fits the Coast Guard definition, Your Honor. So if we reject the notion that the Coast Guard definition is false, do we lose? No, Your Honor, because then you can say it's double-ended because it can go forward and backward. Or you can say the district court should revamp and find out what double-ended is if you're not going to use the Coast Guard definition. But it is not intrinsically in the patent. And, in fact, in the patent only reference, the only thing which could look at to find out whether or not something is double-ended is by the figures, figure 1 and figure 2. If that is not enough to determine intrinsically in the patent what double-ended is, then you do want to find out what one of ordinary skill in 1994 would consider double-ended to be. And you would look at the relevant sources that one of ordinary skill in the art of 1994 would look at. And the record is undisputed that someone of ordinary skill in the art of 1994 would look at the Coast Guard definition, which is what the district court did. And that we do not have a problem with. It's the addition of the gradually tapered support bow and front and stern that we disagree with, and that was not present. Okay, any more questions? I would just like to apologize one more time to Judge Rader. I certainly intended to disrespect her this honor before. Thank you, Mr. Rylander. Mr. Gibson, the case is taken into submission. Thank you.